**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AMERICAN HOME MORTGAGE SECURITIES LITIGATION | ) 07-MD-1898 (TCP) ) ) |
| | ) Electronically filed |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) ) ) ) |

## MEMORANDUM OF LAW
## IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR
## PRELIMINARY APPROVAL OF SETTLEMENTS, CERTIFICATION OF THE CLASS
## FOR SETTLEMENT PURPOSES AND APPROVAL OF NOTICE TO THE CLASS

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
Steven B. Singer (SS-5212)
Avi Josefson
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Telephone: 212-554-1400
Facsimile:  212-554-1444

BERMAN DEVALERIO
Jeffrey C. Block (JCB-0387)
Kathleen M. Donovan-Maher
Kristin Moody
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.      INTRODUCTION ........................................................................................................ 2

II.     DESCRIPTION OF THE LITIGATION ..................................................................... 6

III.    THE PROPOSED SETTLEMENTS ............................................................................ 8

IV.     THE PROPOSED SETTLEMENTS WARRANT PRELIMINARY APPROVAL ........... 10

V.      THE PROPOSED CLASS AND OFFERINGS SUBCLASS SHOULD BE
        CERTIFIED FOR SETTLEMENT PURPOSES UNDER RULES 23(a) AND
        (b)(3) ........................................................................................................................ 16

        A.    The Class Members Are Too Numerous To Be Joined ........................................ 17

        B.    Common Questions Of Law And Fact Exist ........................................................ 18

        C.    Lead Plaintiffs' Claims Are Typical Of Those Of The Class And
              Oklahoma Teachers' And Marlin's Claims Are Typical Of Those Of The
              Offerings Subclass .............................................................................................. 20

        D.    Lead Plaintiffs And Lead Counsel Will Fairly And Adequately Represent
              The Proposed Class And Oklahoma Teachers, Marlin and Lead Counsel
              Will Fairly And Adequately Represent The Interests Of The Offerings
              Subclass .............................................................................................................. 21

        E.    The Proposed Class And Offerings Subclass Satisfy The Requirements Of
              Rule 23(b)(3) ...................................................................................................... 22

              1.   Common Questions Of Law And Fact Predominate ................................... 22

              2.   A Class Action Is Superior To Other Available Methods For
                   Resolving This Litigation .......................................................................... 24

VI.     CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods. Inc., v. Windsor*,
   521 U.S. 591 (1997)...................................................................................22, 23, 25

*Aramburu v. Healthcare Fin. Servs.*,
   No. 02 CV 6535 (ARR), 2005 WL 990995 (E.D.N.Y. Apr. 14, 2005)...................................16

*Armstrong v. Bd. of School Dirs.*,
   616 F.2d 305 (7th Cir. 1980) ...................................................................11

*Baffa v. Donaldson*,
   222 F.3d 52 (2d Cir. 2000)...................................................................21

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007)...................................................................17

*Consol. Rail Corp. v. Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)...................................................................18

*De La Fuente v. DCI Telecomms., Inc.*,
   206 F.R.D. 369 (S.D.N.Y. 2002) ...................................................................18

*Fox v. Cheminova, Inc.*,
   213 F.R.D. 113 (E.D.N.Y. 2003) ...................................................................20

*Greebel v. FTP Software, Inc.*,
   939 F. Supp. 57 (D. Mass. 1996) ...................................................................11

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
   No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ...................................................................12

*In re Arakis Energy Corp. Sec. Litig.*,
   No. 95-CV-3431 (ARR), 1999 WL 1021819 (E.D.N.Y. April 27, 1999) ..................18, 23, 25

*In re Blech Sec. Litig.*,
   187 F.R.D. 97 (S.D.N.Y. 1999) ...................................................................24

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. April 19, 2007)...................................................................11, 12

*In re Global Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................13

*In re Initial Pub. Offering Sec. Litig.,*
    243 F.R.D. 79 (S.D.N.Y. 2007) .............................................. *passim*

*In re Luxottica Group S.p.A. Sec. Litig.,*
    233 F.R.D. 306 (E.D.N.Y. 2006) ....................................................10

*In re MetLife Demutualization Litig.,*
    229 F.R.D. 369 (E.D.N.Y. 2005) ...................................18, 20, 25

*In re Oxford Health Plans, Inc. Sec. Litig.,*
    191 F.R.D. 369 (S.D.N.Y. 2000) ....................................................19

*In re Parmalat Sec. Litig.,*
    04 Civ. 0030 (LAK), 2008 WL 3895539 (S.D.N.Y. Aug. 21, 2001) .....................................18

*In re Prudential Sec. Inc. L.P. Litig.,*
    163 F.R.D. 200 (S.D.N.Y. 1995) ............................................12, 16

*In re SCOR Holding (Switzerland) AG Litig.,*
    537 F. Supp. 2d 556 (S.D.N.Y. 2008).................................... *passim*

*In re Telik, Inc. Sec. Litig.,*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)...........................................17, 24

*In re Top Tankers, Inc. Sec. Litig.,*
    No. 06 civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).....................10

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001)............................................................21

*In re WorldCom, Inc. Sec. Litig.,*
    219 F.R.D. 267 (S.D.N.Y. 2003) .............................................. *passim*

*In re WorldCom, Inc. Sec. Litig.,*
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)..............................................13

*In re Zyprexa Prods. Liab. Litig.,*
    253 F.R.D. 69 (E.D.N.Y. 2008) .....................................................18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,*
    237 F.R.D. 26 (E.D.N.Y. 2006).................................................11, 14

*Sims v. Bank of Am. Corp.,*
    No. 06-CV-5991, 2008 WL 479988 (E.D.N.Y. Feb. 19, 2008) .............................................20

*Teachers' Ret. Sys. v. ACLN Ltd.*,
No. 01 Civ. 1184 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 20, 2004) ..............................20

*Trief v. Dun & Bradstreet Corp.,*
144 F.R.D. 193 (S.D.N.Y. 1992) ..........................................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)..................................................................................................10

*Walsh v. Northrop Grumman Corp.*,
No. 94-CV-5105 TCP, 1999 WL 184654 (E.D.N.Y. March 25, 1999)..................................10

*Weil v. Long Island Sav. Bank*,
200 F.R.D. 164 (E.D.N.Y. 2001) ...................................................................................17, 18

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*


**OTHER AUTHORITIES**

Securities Exchange Act of 1934 ...................................................................................... *passim*

Securities Act of 1933....................................................................................................7, 20

2 *Newberg on Class Actions* § 4:25 (4th ed. 2009)....................................................................23

Lead Plaintiffs, the Teachers' Retirement System of Oklahoma ("Oklahoma Teachers") and the Oklahoma Police Pension and Retirement System, respectfully submit this memorandum in support of preliminary approval of the settlements reached with (i) individual defendants Michael Strauss, Stephen A. Hozie, Robert Bernstein, John A. Johnston, Michael A. McManus, Jr., C. Cathleen Raffaeli, Nicholas R. Marfino, Kenneth P. Slosser, Irving J. Thau, and Kristian R. Salovaara (the "Individual Defendants" and the "Individual Defendants Settlement") for $24 million in cash; (ii) Deloitte & Touche LLP ("Deloitte" and the "Deloitte Settlement") for $4.75 million in cash; and (3) Underwriter Defendants Citigroup Global Markets Inc., Citigroup Inc., J.P. Morgan Chase & Co., Deutsche Bank Securities Inc., Deutsche Bank A.G., Stifel, Nicolaus & Company, Incorporated, and Ryan Beck & Co., Inc. ("Settling Underwriter Defendants" and the "Underwriter Defendants Settlement") for $8.5 million in cash.[1] Preliminary approval of the three Settlements, which represent a total recovery of $37.25 million, will allow Lead Plaintiffs to seek Bankruptcy Court Approval of the Individual Defendants Settlement and, assuming such approval is obtained to then send notice relating to all three Settlements to the Class, and allow the Court to have a single, consolidated hearing to consider:  (i) the fairness of all three Settlements; (ii) the proposed plan of allocation of the settlement proceeds; and (iii) Lead Counsel's application for an award of attorneys' fees and

---

[1]  Lead Plaintiffs did not name American Home Mortgage Investment Corp. ("American Home" or the "Company") as a defendant in the Action because, on August 6, 2007, American Home filed a voluntary petition for bankruptcy and, under the Bankruptcy Code, all actions are automatically stayed against debtors who file voluntary petitions under the Code.  Lehman Brothers Inc. was named as an Underwriter Defendant in the Action, but because of its filing in bankruptcy on September 15, 2008, all proceedings against it have been stayed.  Flagstone Securities, LLC was named as an Underwriter Defendant in the Action, but is a defunct entity and has never appeared in the Action.

reimbursement of expenses.[2]  If the Court approves all three Settlements, all claims asserted against all defendants in the Action will be dismissed with prejudice, and this litigation will be fully and finally resolved.

## I.   __INTRODUCTION__

This is a securities class action in which claims were asserted under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against certain of the Individual Defendants on behalf of purchasers of American Home common and preferred stock during the period July 19, 2005 through and including August 6, 2007 (the "Class Period").  The Complaint also asserted claims arising under the Securities Act of 1933 (the "Securities Act") on behalf of a subclass of purchasers of American Home common stock pursuant or traceable to the registration statements issued in connection with two secondary offerings during the Class Period: (i) an offering on August 9, 2005 of nine (9) million shares of American Home common stock (the "2005 Offering"); and (ii) an offering on April 30, 2007 of four (4) million shares of American Home common stock (the "2007 Offering" and together with the 2005 Offering, the "Offerings").  The Securities Act claims with respect to the 2005 Offering were brought against the Individual Defendants, the Underwriter Defendants and Deloitte (American Home's former auditor); and the Securities Act claims with respect to the 2007

---

[2]   Under the terms of the Individual Defendants Settlement, if the Court grants preliminary approval to that Settlement, the parties will seek Bankruptcy Court Approval (as defined in the Stipulation and Agreement of Settlement with the Individual Defendants) of that Settlement solely to the extent necessary, to approve the use of the proceeds of the Directors' and Officers' Liability Insurance Policies to fund the Settlement.  Within three (3) business days of receiving notice that such approval has been granted, the parties will ask this Court to set a date for a hearing to determine, among other things, whether final approval of the Settlements should be granted. Should Bankruptcy Court Approval not be obtained within one hundred twenty (120) days of its being sought, Lead Plaintiffs, Deloitte and the Settling Underwriter Defendants will ask this Court to set a hearing date so that those two Settlements, which are not impacted by the determination of the Bankruptcy Court, can proceed.

Offering were brought against the Individual Defendants, underwriter defendants Citigroup Global Markets Inc. and Citigroup, Inc., and Deloitte. The proposed representatives for the Offerings Subclass are Lead Plaintiff Oklahoma Teachers and additional named plaintiff Dana Marlin ("Marlin").

After multiple mediation sessions and arduous negotiations between and subsequent to the formal sessions, which were also facilitated by the mediator, David Geronemus, Esq. (a well-respected and experienced mediator), separate agreements in principle to settle the claims against the Individual Defendants, Deloitte and the Underwriter Defendants were reached. Thus, on January 16, 2009 at the conclusion of the second full-day formal mediation session, an agreement-in-principle was reached to settle all claims asserted on behalf of the Class and the Offerings Subclass against the Individual Defendants for $24 million in cash which, after further negotiations, was memorialized in a Stipulation and Agreement of Settlement dated April 8, 2009. After several additional months of negotiations and mediation, an agreement-in-principle was reached on or about April 7, 2009 to settle all claims asserted on behalf of the Offerings Subclass against Deloitte for $4.75 million in cash, which after further negotiations, was memorialized in a Stipulation and Agreement of Settlement dated July 1, 2009. After the agreement in principle with Deloitte was reached, there were renewed negotiations with the Underwriter Defendants again conducted under the supervision of Mr. Geronemus. Pursuant to those continuing efforts, an agreement in principle was reached on or about June 8, 2009 to settle all claims on behalf of the Offerings Subclass against the Underwriter Defendants for $8.5 million in cash which, after further negotiations, was memorialized in a Stipulation and

Agreement of settlement dated July 1, 2009.  The three Settlements reached, if approved, will resolve all claims asserted in the Action.[3]

As set forth below, each of the proposed Settlements was reached at a time when Lead Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of the claims asserted and was achieved only after extended arm's-length negotiations, including numerous mediation sessions before Mr. Geronemus.  Lead Plaintiffs and Lead Counsel believe that the proposed Settlements are in the best interests of the Class and the Offerings Subclass.

At the final settlement approval hearing (the "Settlement Hearing"), the Court will have before it more extensive motion papers submitted in support of the proposed Settlements, and will be asked to make a determination as to whether the Settlements are fair, reasonable and adequate under all of the circumstances surrounding the Action.  At this juncture, Lead Plaintiffs request only that the Court grant preliminary approval of the proposed Settlements so that, subject to Bankruptcy Court Approval or the passage of one hundred twenty (120) days from the time such approval is sought (as explained above), notice of the Settlements may be sent to the Class.  This Memorandum describes the basis for the Preliminary Approval Motion, and sets forth a proposed schedule for the process going forward.

Lead Plaintiffs respectfully request that the Court enter the proposed Order Preliminarily Approving Settlements ("Preliminary Approval Order"), attached as Exhibit 4 to the accompanying Preliminary Approval Motion, which, among other things, will:

---

[3]   Copies of the Individual Defendants Stipulation, the Deloitte Stipulation and the Underwriter Defendants Stipulation and their respective exhibits are attached as exhibits 1- 3, respectively, to Lead Plaintiffs' Notice of Motion for Preliminary Approval of Settlements, Certification of the Class for Settlement Purposes and Approval of Notice to the Class (the "Preliminary Approval Motion") submitted concurrently herewith.  Unless otherwise defined herein, all capitalized terms herein are used as defined in the Stipulations.

(i)     preliminarily approve the Settlements on the terms set forth in the respective Stipulations;

(ii)    approve the form, substance and requirements of the Notice of Pendency of Class Action and Proposed Settlements, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), the Summary Notice of Proposed Settlements, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Summary Notice") and the Proof of Claim and Release form (the "Claim Form");

(iii)   find that the procedures established for mailing and distribution of the Notice and Claim Form and publication of the Summary Notice, substantially in the manner and form set forth in the Preliminary Approval Order, constitute the best notice practicable under the circumstances, and are in full compliance with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, Section 27 of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(7), as amended by the Private Securities Litigation Reform Act of 1995, and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act; and

(iv)    set a schedule, keyed off the Settlement Hearing Date that will be set, and procedures for: dissemination of the Notice and publication of the Summary Notice; requesting exclusion from the Class; objecting to any or all of the Settlements, the proposed Plan of Allocation or Lead Counsel's fee and expense request; submitting papers in support of final approval of the Settlements, the Plan of Allocation and Lead Counsel's fee and expense request, and the Settlement Hearing.

Lead Plaintiffs also request certification of the proposed Class and the Offerings Subclass

for settlement purposes only.[4]   Such certification complies with Rules 23(a) and (b)(3) of the

---

[4]  The parties have stipulated and agreed to certification of the Action as a class action, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of:

(a) all persons or entities who purchased or otherwise acquired shares of American Home common and/or preferred stock during the period from July 19, 2005 through and including August 6, 2007 and who were damaged thereby (the "Class"); and

(b) all persons or entities who purchased or otherwise acquired shares of American Home common stock pursuant or traceable to the registration statements issued in connection with the secondary offerings conducted on or about August 9, 2005 (the "2005 Offering")

Federal Rules of Civil Procedure.  The proposed Preliminary Approval Order also provides for such certification.

## II.   DESCRIPTION OF THE LITIGATION

Throughout the Class Period, American Home was a real estate investment trust engaged in the business of investing in mortgage-backed securities and mortgage loans resulting from the securitization of residential mortgage loans originated and serviced by the Company's subsidiaries.  The gravamen of the Action is that, during the Class Period, Defendants, in violation of the federal securities laws, made a series of false and misleading statements regarding American Home's publicly reported financial results.  These statements were set forth in earnings releases, SEC filings (including the registration statements filed in connection with the Offerings), and other public statements.  Lead Plaintiffs allege that, as a result of Defendants' dissemination of the allegedly false and misleading statements during the Class Period, the market price of American Home common and preferred stock was artificially inflated, thereby causing damages to Class Members (including Offerings Subclass Members).

---

and on or about April 30, 2007 (the "2007 Offering," and together with the 2005 Offering, the "Offerings") and who were damaged thereby (the "Offerings Subclass").

Excluded from the Class and the Offerings Subclass are the following persons or entities: (i) Defendants and American Home; (ii) the parents, successors, subsidiaries, and affiliates of any Defendant or of American Home, (iii) members of the immediate family of each of the Individual Defendants; (iv) any person who was an officer or director of American Home, Deloitte or any of the Underwriter Defendants (or any other underwriter of the 2005 Offering or the 2007 Offering) during the Class Period; and (v) any firm, trust, corporation, or other entity in which any of the Individual Defendants has or had a Controlling Interest during the Class Period.  Also excluded from the Class are any persons or entities who exclude themselves by filing a timely request for exclusion in accordance with the requirements set forth in the Notice.

Individual Defendants Stipulation ¶ 1(i); Underwriter Defendants Stipulation ¶ 1(h); Deloitte Stipulation ¶ 1(h).

Beginning on July 31, 2007, twenty-one class actions were filed in this Court alleging violations of federal securities laws.  By Order dated March 19, 2008, the Court consolidated these class actions into this Action; appointed Oklahoma Teachers and the Oklahoma Police Pension and Retirement System as Lead Plaintiffs; and approved Lead Plaintiffs' selection of Bernstein Litowitz Berger & Grossmann LLP and Berman DeValerio as Lead Counsel.

On June 4, 2008, Lead Plaintiffs filed the Consolidated Amended Class Action Complaint (the "Complaint"), which included Dana Marlin, Ilene Karol, and Lindy Mika as Additional Named Plaintiffs.  The Complaint asserts claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder against certain of the Individual Defendants; and claims under Sections 11, 12, and 15 of the Securities Act against all Defendants.

On September 12, 2008, Defendants filed seven separate motions to dismiss the Complaint.  Lead Plaintiffs served their oppositions to Defendants' motions on November 14, 2008 and reply papers were served on December 5, 2008.  The motions were pending before the Court when the agreements to settle with Defendants were reached.

Before agreeing to the Settlements, Lead Counsel conducted an extensive investigation into the events and transactions underlying the claims alleged in the Complaint.  Among other things, Lead Counsel interviewed dozens of former American Home employees, obtained and reviewed internal Company documents, analyzed potential claims and researched the applicable law with respect to the claims asserted and Defendants' potential defenses thereto and also consulted with an expert on damages.  At the time the agreements to settle were reached, Lead Counsel had conducted an investigation into the facts and the law, and understood the strengths

and weaknesses of Lead Plaintiffs' and Defendants' respective positions based on their briefing of the motions to dismiss and the preparation of a detailed mediation statement.

## III.    THE PROPOSED SETTLEMENTS

Settlement discussions, which began while the motions to dismiss were pending, were prompted by the severe ability to pay issues in this Action.  Lead Plaintiffs and Lead Counsel recognized that prolonged continued litigation could seriously reduce, if not preclude, a recovery from the Individual Defendants, the only defendants against whom the Exchange Act claims had been brought.  American Home was in bankruptcy.  The Individual Defendants have limited personal assets; and the only source of any substantial recovery from them, the directors' and officers' liability insurance policies, was a wasting asset.  Indeed, when settlement discussions commenced, the policies had already been significantly depleted and it was clear that, if the case proceeded through trial and the appeals that were sure to follow, the policies would be exhausted.  Thus, even if plaintiffs ultimately prevailed on the merits, which on a securities fraud claim is far from a certainty, there would be nothing to satisfy a judgment.  Notwithstanding these concerns, the settlement negotiations were intense.  They included two full-day mediation sessions before David Geronemus of JAMS on January 6 and 16, 2009 at the conclusion of which the agreement with the Individual Defendants to settle for $24 million in cash was reached. However, Lead Plaintiffs were not able to reach agreements with Deloitte and the Underwriter Defendants at that time.

After reaching agreement with the Individual Defendants, Lead Plaintiffs engaged in months of negotiation and mediation with Deloitte under the auspices of Mr. Geronemus before the agreement in principle to settle for $4.75 million was reached on or about April 8, 2009. After the agreement with Deloitte was reached, renewed discussions with the Underwriter Defendants ensued, again with the assistance of Mr. Geronemus.  It was not until June 8, that an

agreement with this last group of defendants in the Action was reached.  Lead Plaintiffs understood that the Securities Act claims against Deloitte and the Underwriter Defendants were limited and that recoverable damages on the claims were also limited.  Additionally, these defendants had strong defenses of due diligence and reasonable reliance, and also asserted that management had concealed material information from them.  Moreover, these defendants also had strong loss causation defenses.  American Home's financial condition went into "free fall" during the summer of 2007 and it filed for bankruptcy on August 6, 2007 before full disclosure about the Company's operations and financial condition was made.  Notwithstanding these serious risks to the Offerings Subclass prevailing on the merits, these defendants have agreed to pay $13.25 million ($4.75 million from Deloitte and $8.5 million from the Underwriter Defendants), or approximately 40% of the estimated damages incurred by the Offerings Subclass.

Based on their extensive investigation into the events and transactions underlying the claims alleged in the Complaint and their work with their damages experts, Lead Plaintiffs and Lead Counsel have concluded that the terms and conditions of the Settlements, including the respective cash Settlement Amounts provided thereunder and the proposed allocation thereof, are fair, reasonable and adequate to the Class and the Offerings Subclass.  The Settlements provide substantial benefits now, namely a total of $37.25 million in cash (plus interest earned thereon, less deductions for taxes, notice and administrative costs, and any Court-awarded attorneys' fees and litigation expenses), as compared to the risk that a similar, smaller, or no recovery would be achieved after a trial and appeals, possibly years in the future.

Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit but recognize the expense and length of continued proceedings necessary to pursue

9

their claims against Defendants through trial and possible appeals, as well as the difficulties in establishing liability for allegations of fraud.  Lead Plaintiffs and Lead Counsel have taken into account the possibility that the claims asserted in the Complaint might have been dismissed in response to Defendants' motions to dismiss[5] or anticipated motions for summary judgment, and have considered issues that would have been decided by a jury in the event of a trial of the Action, including whether the Individual Defendants named in the Exchange Act claims acted with an intent to mislead investors, whether the alleged misrepresentations and omissions were material to investors, and whether all of the Class Members' and Offerings Subclass Members' losses were caused by the alleged misrepresentations or omissions and the amount of damages.

In light of these factors, Lead Plaintiffs and Lead Counsel believe that the Settlements achieved are an excellent result and are in the best interests of the Class and the Offerings Subclass.

## IV.    THE PROPOSED SETTLEMENTS WARRANT PRELIMINARY APPROVAL

"It is well settled that the law favors settlement of disputed claims, particularly in the context of complex class actions." *Walsh v. Northrop Grumman Corp.*, No. 94-CV-5105 TCP, 1999 WL 184654, at *2 (E.D.N.Y. March 25, 1999), *see Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting "the strong judicial policy in favor of settlements, particularly in the class action context" (citation omitted)); *In re Top Tankers, Inc. Sec. Litig.*, No. 06 civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) ("Courts observe a general policy favoring the settlement of disputed claims, especially with respect to class actions."); *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class

---

[5] Under the terms of the proposed Settlements, the Settling Defendants have agreed that the Settlements will remain binding and fully enforceable regardless of any rulings with respect to the motions to dismiss the Complaint.

action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" (citation omitted)).

In considering whether to grant preliminary approval to a class action settlement agreement, courts make a preliminary evaluation of the fairness of the settlement, prior to a hearing on notice.  *See In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) ("*In re IPO*").  As courts in this Circuit have explained:

> Preliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of a class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.

*In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *9 (E.D.N.Y. April 19, 2007); *see also In re IPO*, 243 F.R.D. at 87; *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006).  Additionally, where, as here, the Settlements were reached under the supervision of appropriately selected institutional Lead Plaintiffs, they are entitled to an even greater presumption of reasonableness.  *See Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63-64 (D. Mass. 1996) ("'Institutions with large stakes in class action have much the same interests as the plaintiff class generally; thus, courts could be more confident settlements negotiated under the supervision of institutional plaintiffs were fair and reasonable . . .'") (quoting Senate Report No. 104-98, 104th Congress, reprinted in 1995 U.S.C.C.A.N. 679, 690).

The preliminary approval hearing "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Armstrong v. Bd. of School Dirs.*, 616 F.2d 305, 314 (7th

Cir. 1980).  "[A] full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval."  *Gilat Satellite*, 2007 WL 1191048, at *10.

At this point, Lead Plaintiffs request only that the Court take the first step in this process, which is to grant preliminary approval of the proposed Settlements.  The proposed Settlements, which provide for a total of $37.25 million in cash, plus interest earned thereon, are clearly beneficial to the Class.  Given the complexities of this Action, and the continued risks if the parties were to proceed to trial, the Settlements represent a reasonable resolution of the Action, and eliminate the risk that the Class might not otherwise recover from the Settling Defendants (or recover an amount substantially less than the $37.25 million total Settlement Amount).  *See, e.g., Gilat Satellite*, 2007 WL 1191048, at *10 (noting that "[s]ecurities class actions are generally complex and expensive to prosecute," and that given "the risks and costs involved in litigating this matter" the proposed settlement was "within the range of possible approval required for preliminary approval"); *In re Prudential Sec. Inc. L.P. Litig*., 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class.").

In this case, it is highly likely that even if Lead Plaintiffs were to secure a greater judgment at trial, the Individual Defendants would have been unable to satisfy that judgment.  American Home is in bankruptcy.  The Individual Defendants against whom Exchange Act claims were asserted have limited insurance which was being depleted by the ongoing prosecution of the Action.  Thus, there were serious questions about those defendants' ability to withstand a judgment substantially greater than, or even equal to, the Settlement reached.  These facts strongly militate in favor of the proposed Settlement with the Individual Defendants.  *See,*

*e.g., In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *8 (E.D. Pa. Nov. 21, 2008) (the fact that corporation was in bankruptcy and individual defendants had limited assets strongly supported the proposed settlement); *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (the fact that settling defendants were all individuals whose assets were small compared to the losses alleged in the action and the corporations they worked for were in bankruptcy, weighed in favor of approving the settlement).

Additionally, with respect to the claims asserted against defendants Deloitte and the Underwriter Defendants, *i.e*, the Securities Act claims, there was a real risk that these defendants could avoid liability or severely limit the amount of any recovery against them.  The Securities Act provides them with due diligence or reasonable care defenses.  *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 338 (S.D.N.Y. 2005).  Moreover, to the extent that they could establish that the losses suffered by Offerings Subclass Members were attributable to market or other factors unrelated to the alleged misrepresentations, they would reduce the amount of any potential recovery for the Offerings Subclass.  Accordingly, even if Lead Plaintiffs were successful at trial in overcoming the due diligence and reasonable care defenses available to Deloitte and the Underwriter Defendants, they would still face the risk that any judgment obtained against these Defendants might be less than the Settlement Amounts provided under the respective Settlements.

Reference to the additional factors set forth above considered by courts in granting preliminary approval of class action settlements also lends strong support to the proposition that the Settlements are well within the range of possible approval.  The Action has been actively prosecuted for almost two years.  At the time the parties agreed to settle, the motions to dismiss the Complaint had been fully briefed and Lead Plaintiffs had conducted a substantial

investigation into the events and transactions alleged in the Complaint.  Furthermore, the terms of the proposed Settlements are the product of extensive arm's-length negotiations, and were reached only after two full-day meditation sessions with the assistance of a professional mediator.  Accordingly, there is no evidence here of any collusion between the parties.

Nor is there any evidence that Lead Plaintiffs will improperly receive preferential treatment.  To the contrary, Lead Plaintiffs will be treated exactly the same as any other Class Member.  Moreover, Lead Counsel have significant experience in securities and other complex class action litigation, and have negotiated hundreds of other substantial class action settlements throughout the country.  Lead Counsel are "well informed as to the operative facts" and "considerable risks" of the Action.  *See Reade-Alvarez*, 237 F.R.D. at 34.  It is Lead Counsel's informed opinion that, given the uncertainty and further substantial expense of pursuing the Action through trial and possible appeals, the proposed Settlements are fair, reasonable and adequate, and in the best interests of the Class and the Offerings Subclass.

At this point, the Court need not answer the ultimate question: whether the Settlements are fair, reasonable and adequate.  The Court is only being asked to preliminarily approval the Settlements so that notice of the Settlements can be sent to the Class and a hearing, pursuant to Federal Rule of Civil Procedure 23(e), can be held to consider any views expressed by Class Members as to the fairness of the Settlements.  *See In re IPO*, 243 F.R.D. at 87; *Reade-Alvarez*, 237 F.R.D. at 34.

As outlined in the proposed Preliminary Approval Order, if this Court grants preliminary approval to the Settlements, the parties will seek an order in the United States Bankruptcy Court for the District of Delaware approving, to the extent necessary, the use of proceeds from American Home's Directors' and Officers' Liability Insurance Policies to fund the Individual

Defendants Settlement.  Once that approval has been obtained from the Bankruptcy Court, the parties will promptly request that the Court set a date and time for the Settlement Hearing.  As noted above, should that approval not be obtained within one hundred twenty (120) days of its being sought, the Lead Plaintiffs, Deloitte and the Underwriter Defendants will seek to have a date and time set for a Settlement Hearing with respect to those two Settlements.  Once the Court has scheduled the Settlement Hearing, Lead Plaintiffs will notify the Class of the Settlements by mailing the Notice and Claim Form to all reasonably identifiable Class Members, as well as nominee holders, within fifteen (15) business days from the date on which the Court sets a date for the Settlement Hearing.  The Notice will advise Class Members of the essential terms of the Settlements, set forth the procedure for objecting to the Settlements, as well as the proposed Plan of Allocation and Lead Counsel's fee and expense request, or opting out of the Class, and will provide specifics on the date, time and place of the Settlement Hearing.   The proposed Preliminary Approval Order further requires Lead Plaintiffs to cause the Summary Notice to be published once in the national edition of *The Wall Street Journal* and over the *PR Newswire* within ten (10) business days of the mailing of the Notice.  Lead Counsel will also post a copy of the Notice on their respective firm websites, as well as on the website of the Claims Administrator.  Lead Counsel believe that, because the Notice and Summary Notice fairly apprise Class Members and Subclass Members of their rights with respect to the Settlements, they represent the best notice practicable under the circumstances and should be approved by the Court.

Lead Plaintiffs propose the following schedule for setting the Settlement Hearing date, mailing the Notice and Claim Form to the Class, publishing the Summary Notice, and

establishing deadlines for submitting claims, opting out of the Class or objecting to the Settlements:

| | |
|---|---|
| The parties will ask the Court to set a date and time for the Settlement Hearing | Within 3 business days of receiving notice of Bankruptcy Court Approval or 120 days after seeking Bankruptcy Court Approval if such approval has not been obtained, whichever is sooner. |
| Notice and Claim Form mailed to Class. | 15 business days after the date and time of the Settlement Hearing is set by Court. |
| Summary Notice published. | 10 business days after Notice mailed to Class. |
| Last day for Class Members to opt-out of the Class or object to Settlements, the Plan and/or the fee and expense request. | 21 days prior to the Settlement Hearing. |
| Lead Plaintiffs file their papers in support of final approval of the Settlements, the Plan and the fee and expense request. | 7 days prior to the date of the Settlement Hearing. |
| Last day for submitting claims. | 120 days from the date set for the mailing of Notice. |

## V.   THE PROPOSED CLASS AND OFFERINGS SUBCLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES UNDER RULES 23(a) AND (b)(3)

In granting preliminary settlement approval, the Court should also certify the Class and Offerings Subclass under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re Prudential Sec. Litig.*, 163 F.R.D. at 205.  "The law in the Second Circuit favors the liberal construction of Rule 23 . . . and courts may exercise broad discretion when they determine whether to certify a class."  *Aramburu v. Healthcare Fin. Servs.*, No. 02 CV 6535 (ARR), 2005 WL 990995, at *2 (E.D.N.Y. Apr. 14, 2005) (citation omitted).

Lead Plaintiffs and the additional proposed Offerings Subclass representative request certification of the Class and Offerings Subclass for settlement purposes pursuant to the numerosity, commonality, typicality and adequacy requirements of Rule 23(a)(1)-(4) and the predominance and superiority requirements of Rule 23(b)(3).  As demonstrated below, the proposed Class and Offerings Subclass meet each of these requirements and therefore warrant certification for settlement purposes.

### A.   The Class Members Are Too Numerous To Be Joined

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 582 (S.D.N.Y. 2008); *Weil v. Long Island Sav. Bank*, 200 F.R.D. 164, 168 (E.D.N.Y. 2001).  To satisfy this requirement, joinder need not be "impossible," but "the difficulty or inconvenience of joining all members of the class [must] make use of the class action appropriate."  *In re SCOR Holding (Switzerland) AG Litig.,* 537 F. Supp. 2d 556, 570 (S.D.N.Y. 2008) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 244-45 (2d Cir. 2007)); *see also In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 279 (S.D.N.Y. 2003) ("To satisfy the numerosity requirement of Rule 23(a), plaintiffs must show that joinder is 'impracticable,' not that it is 'impossible.'").  The numerosity requirement is satisfied here because when claims involve allegations of fraud in connection with publicly-traded securities, "common sense dictates the purported plaintiff class is likely quite numerous."  *In re IPO,* 243 F.R.D. at 90 (quoting *Fogarazzo v. Lehman Bros., Inc.,* 232 F.R.D. 176, 182 (S.D.N.Y. 2005)).

Here, the proposed Class includes all purchasers of American Home common or preferred stock from July 19, 2005 through August 6, 2007 who were damaged thereby.  As of December 31, 2006, there were over fifty (50) million shares of American Home stock outstanding, and pursuant to the Offerings, thirteen (13) million shares of American Home

common stock were sold.  While the exact number of purchasers of American Home stock is unknown to Lead Plaintiffs at this time, Lead Plaintiffs estimate that Class Members and Offerings Subclass Members number in the hundreds, if not thousands.  Thus, the numerosity requirement is easily satisfied for both the Class and Subclass.  *See Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"); *In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 197 (E.D.N.Y. 2008) (same); *SCOR*, 537 F. Supp. 2d at 570 (same); *WorldCom*, 219 F.R.D. at 279 (same); *De La Fuente v. DCI Telecomms., Inc.*, 206 F.R.D. 369, 390 (S.D.N.Y. 2002) ("Given the large numbers of outstanding DCI stock, it is reasonable to infer that the number of plaintiffs satisfies the requirement of numerosity.").

### B.   Common Questions Of Law And Fact Exist

Rule 23(a)(2) requires the existence of questions of law or fact common to the class.  The commonality requirement is satisfied "as long as the proposed class members share at least one common question of law or fact." *In re MetLife Demutualization Litig.*, 229 F.R.D. 369, 373 (E.D.N.Y. 2005); *see SCOR*, 537 F. Supp. 2d at 571; *Weil*, 200 F.R.D. at 169.  This requirement is satisfied "where putative class members have been injured by similar material misrepresentations and omissions." *In re Parmalat Sec. Litig.*, 04 Civ. 0030 (LAK), 2008 WL 3895539, at *4 (S.D.N.Y. Aug. 21, 2008) (quoting *Fogarazzo*, 232 F.R.D. at 179-80).  As a result, "[s]ecurities fraud cases by their nature usually allege a common course of conduct sufficient to satisfy Rule 23(a)(2)." *MetLife Demutualization*, 229 F.R.D. at 373; *see also In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 WL 1021819, at *5 (E.D.N.Y. April 27, 1999) ("where all the class claims arise out of publicly announced, allegedly false statements, common questions of law and fact are virtually assured").

In this Action, there are numerous common legal and factual issues, and the same facts giving rise to the claims of the proposed class representatives also give rise to absent Class

Members' claims and absent Offerings Subclass Members' claims.    Indeed, absent Class

Members and absent Offerings Subclass Members would have to prove identical facts, and

answer identical questions were they to pursue their claims individually.   The common legal and

factual issues include, among others:

     a.    whether the federal securities laws were violated by Defendants' conduct as alleged in the Complaint;

     b.    whether the SEC filings, press releases and other public statements disseminated to the investing public during the Class Period contained material misstatements or omitted to state material information;

     c.    whether the 2005 Offering materials or 2007 Offering materials contained material misstatements or omitted to state material information;

     d.    whether Deloitte's unqualified audit reports for the Company's consolidated financial statements for 2004 and 2006 contained material misstatements;

     e.    whether, with regard to claims under the Exchange Act, the Individual Defendants acted with the requisite state of mind in omitting or misrepresenting facts in the public statements;

     f.    whether, and to what extent, the market prices of the American Home shares during the Class Period were artificially inflated due to the non-disclosures or misstatements complained of in the Complaint; and

     g.    whether the members of the Class and the Offerings Subclass have sustained damages as a result of the conduct complained of in the Complaint, and if so, the proper measure of damages.

Complaint at ¶ 52.  As the Court stated in *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D.

369, 3734 (S.D.N.Y. 2000), "[w]here the facts as alleged show that Defendants' course of

conduct concealed material information from an entire putative class, the commonality

requirement is met."  Thus, the commonality requirement of Rule 23(a)(2) is easily satisfied by

the facts alleged in the present Action.

**C.    Lead Plaintiffs' Claims Are Typical Of Those Of The Class
And Oklahoma Teachers' And Marlin's Claims
Are Typical Of Those Of The Offerings Subclass_____**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Claims are "typical" where – as here – they arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. *See SCOR*, 537 F. Supp. 2d at 571; *Sims v. Bank of Am. Corp.*, No. 06-CV-5991, 2008 WL 479988, at *7 (E.D.N.Y. Feb. 19, 2008). The typicality requirement of Rule 23(a)(3) is liberally construed, and "typical" does not mean "identical." *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 200 (S.D.N.Y. 1992); *see Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 127 (E.D.N.Y. 2003).

The focus of the typicality inquiry is not on the behavior of Lead Plaintiffs or named plaintiff Dana Marlin, but rather on Defendants' actions. *See, e.g.*, *Teachers' Ret. Sys. v. ACLN Ltd*., No. 01 Civ. 1184 (LAP), 2004 WL 2997957, at *5 (S.D.N.Y. Dec. 20, 2004). The critical question is whether the named plaintiff and the class can point to the same "common course of conduct" to support a claim for relief. Courts have recognized that typicality is established "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *WorldCom,* 219 F.R.D. at 280 (citation omitted); *see MetLife Demutualization*, 229 F.R.D. at 374.

Here, the claims asserted by Lead Plaintiffs are typical, if not identical, to the claims of other Class Members and, with respect to Oklahoma Teachers and Marlin to the claims of the other Offerings Subclass Members. The Complaint alleges that various defendants violated Sections 11, 12, and 15 of the Securities Act of 1933, and Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by making or approving public statements

that misrepresented or omitted material facts.  Lead Plaintiffs allege that they like the rest of the

Class, and Oklahoma Teachers and Marlin allege that they like the rest of the Offerings Subclass,

paid artificially-inflated prices for American Home securities as a result of the applicable

Defendants' alleged material misrepresentations and omissions.  Those claims, and the claims of

the absent Class Members and the absent Offerings Subclass Member, are based upon precisely

the same theories, and will be proven by the same evidence.  Thus, the requirements of Rule

23(a)(3) are satisfied.

> **D.      Lead Plaintiffs And Lead Counsel Will Fairly And Adequately Represent**
> **The Proposed Class And Oklahoma Teachers, Marlin and Lead Counsel Will**
> **Fairly And Adequately Represent The Interests Of The Offerings Subclass**

Rule 23(a)(4) requires that a representative plaintiff fairly and adequately protect the

interests of the class.  "To determine whether a named plaintiff will be an adequate class

representative, courts inquire whether: '1) plaintiff's interests are antagonistic to the interest of

other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to

conduct the litigation.'"  *WorldCom*, 219 F.R.D. at 282 (quoting *Baffa v. Donaldson, Lufkin &*

*Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)); *see SCOR*, 537 F. Supp. 2d at 571.  A

conflict or potential conflict of interest will not necessarily defeat a finding of adequacy.  To do

so, the conflict must be "fundamental."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d

124, 145 (2d Cir. 2001).

As discussed above, Lead Plaintiffs' claims arise from the same course of conduct as, and

are typical of, the claims of the Class and Oklahoma Teachers' and Marlin's claims arise from

the same course of conduct as, and are typical of, the claims of the Offerings Subclass.  Lead

Plaintiffs and all Class Members and Oklahoma Teachers and Marlin share an interest in proving

the alleged falseness of the applicable Defendants' representations and obtaining redress.  *See*

*SCOR*, 537 F. Supp. 2d at 571-72 (finding adequacy when lead plaintiffs demonstrated an intent

to remedy the harm caused by defendants' alleged misrepresentations to the public).   The proposed Class and Offerings Subclass representatives have no interest antagonistic to the interests of other Class Members or other Offerings Subclass Members as applicable.   In addition, Lead Plaintiffs have retained experienced, capable counsel to represent the Class and Offerings Subclass.   Bernstein Litowitz Berger & Grossmann LLP and Berman DeValerio have successfully pursued and resolved a multitude of complex class actions in courts throughout the United States.   Furthermore, the proposed $37.25 million total cash Settlement Amount obtained for the Class and the Offerings Subclass is further evidence that Lead Plaintiffs and their counsel have fairly and adequately protected the interests of the Class, and will continue to do so.   Accordingly, the adequacy requirement of Rule 23(a)(4) is met in this Action.

> **E.      The Proposed Class And Offerings Subclass Satisfy**
> **The Requirements Of Rule 23(b)(3)**

In addition to the four requirements of Rule 23(a), a certifiable class must also satisfy one of the three subparts of Rule 23(b).   Lead Plaintiffs, Oklahoma Teachers and Marlin here seek class certification under Rule 23(b)(3), which requires that:

> the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).   This rule is designed to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."   *Amchem Prods. Inc., v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotations omitted).

> **1.      Common Questions Of Law And Fact Predominate**

The predominance inquiry normally focuses "'on the legal or factual questions that qualify each class member's case as a genuine controversy . . . [and] tests whether the proposed

classes are sufficiently cohesive to warrant adjudication by representation.'"  *Amchem*, 521 U.S. at 623.  "Predominance will be established if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *WorldCom,* 219 F.R.D. at 287-88 (internal citation omitted); *see also SCOR*, 537 F. Supp. 2d at 572.  As the Supreme Court has noted, predominance is "a test readily met in certain cases alleging . . . securities fraud."  *Amchem,* 521 U.S. at 625; *see In re IPO*, 243 F.R.D. at 91 ("Common questions of law and fact predominate with respect to plaintiffs' garden-variety securities fraud claims . . . because the issue of defendants' liability under federal securities law is common to all class members."); *Arakis*, 1999 WL 1021819, at *10 ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues.").  "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." 2 *Newberg on Class Actions* § 4:25 (4th ed. 2009).

In this Action, it is alleged that all Class Members and all Offerings Subclass Members were subjected to, and harmed by, the applicable Defendants' uniform course of conduct in issuing materially false and misleading statements.  Virtually all the issues in this case – including the false or misleading nature of Defendants' public statements or omissions, the materiality of those statements or omissions, where applicable the Defendants' state of mind in issuing the statements, and the losses caused by the statements or omissions – are susceptible to generalized proof using common evidence.  Thus, common issues predominate and the proposed Class and Offerings Subclass satisfy Rule 23(b)(3).

2.      **A Class Action Is Superior To Other Available
        <u>Methods For Resolving This Litigation</u>**

Rule 23(b)(3) also requires that a class action be "superior to other available methods for

fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

> The matters pertinent to these findings include: (A) the class members' interests in
> individually controlling the prosecution or defense of separate actions; (B) the
> extent and nature of any litigation concerning the controversy already begun by or
> against class members; (C) the desirability or undesirability of concentrating the
> litigation of the claims in the particular forum; and (D) the likely difficulties in
> managing a class action.

*Id.*

Courts have found that the superiority requirement is satisfied where:

> The potential class members are both significant in number and geographically
> dispersed[, and t]he interest of the class as a whole in litigating the many common
> questions substantially outweighs any interest by individual members in bringing
> and prosecuting separate actions.

*In re Telik.*, 576 F. Supp. 2d at 584 (quoting *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133

(S.D.N.Y. 2001)).

Here, the utility of presenting the claims of Class Members and Offerings Subclass

Members through the class action device is substantial, as Class Members and Offerings

Subclass Members who allegedly have been injured by the applicable Defendants' conduct

number in the hundreds, if not thousands, but the vast majority have not been damaged to a

degree that would induce them to bring their own suits, nor do they have the resources to conduct

litigation of such complexity.  *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999)

("violations of the federal securities laws, such as those alleged in the Complaint, inflict

economic injury on large numbers of geographically dispersed persons such that the cost of

pursuing individual litigation to seek recovery is often not feasible.").  In addition, a class action

is the most economical method of adjudicating the claims here because it will avoid duplicative

litigation and save substantial judicial resources.  *See MetLife Demutualization*, 229 F.R.D. at 380-81; *Arakis*, 1999 WL 1021819, at *11.

Finally, settlement of this Action on a class basis presents no trial management difficulties.  As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620.

## VI.    CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court (i) grant preliminary approval of the proposed Settlements; (ii) certify the proposed Class and Offerings Subclass for settlement purposes; and (iii) enter the accompanying proposed Preliminary Approval Order.

Dated: July 7, 2009                    Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
**   & GROSSMANN LLP**

  /s/ Steven B. Singer
Steven B. Singer (SS-5212)
Avi Josefson
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Telephone: 212-554-1400
Facsimile:  212-554-1444

**BERMAN DEVALERIO**
Jeffrey C. Block (JCB-0387)
Kathleen M. Donovan-Maher
Kristin Moody
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

*Attorneys for Lead Plaintiffs and*
*Co-Lead Counsel for the Class*

**MURRAY, FRANK & SAILER LLP**
Marvin L. Frank (MF-1436)
275 Madison Avenue, 8th Floor
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**SUSMAN HEFFNER & HURST LLP**
Arthur T. Susman
Matthew T. Heffner
Matthew T. Hurst
Two First National Plaza, Suite 600
Chicago, Illinois 60603
Telephone: (312) 346-3466
Facsimile: (312) 346-2829

*Attorneys for Plaintiffs Marlin, Karol and Mika*

#358176 v6