

SPECTOR ROSEMAN
KODROFF & WILLIS PC

Direct E-Mail:
AAbramowitz@srkw-law.com

January 12, 2010

**VIA OVERNIGHT MAIL AND ECF**
The Honorable Thomas C. Platt
United States District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722-9014

    Re:    <u>Utah Retirement Systems v. Strauss et al., 07 Civ. 1898 (TCP)</u>

Dear Judge Platt:

    I write on behalf of Plaintiff the Utah Retirement Systems ("URS") in the above-referenced case and in response to this evening's eleventh hour letter to Your Honor by counsel for certain individual defendants on behalf of all settling defendants ("Defendants' letter").

    The charge in Defendants' letter that URS is "[i]n direct contravention of this Court's orders" is wholly factually inaccurate and misleading in the extreme.  URS has fully complied with the Court's July 30, 2009 Order regarding the prerequisites for opting out of the class action.  It has documented every single purchase and sale of American Home Mortgage stock and noted that it believes certain of its purchases are traceable to the 2007 Offering.  The clear wording of the Court's Order requires nothing further.  For purposes of that Order, the relevant provision states:

> To the extent that purchases of American Home common shares were purchased pursuant or traceable to the 2005 Offering and/or the 2007 Offering, the request for exclusion must so state and supporting documentation must be provided.

    URS' opt-out clearly stated that it had purchased shares traceable to the 2007 Offering, and it then provided all the necessary details concerning all of its transactions.

What it did not do was attempt to identify *which* specific transactions are traceable to the 2007 Offering. URS is not required to do this and Defendants cite no authority to support their nonsensical position. A plaintiff is not required to plead evidence in a complaint as to *which* specific transactions are traceable to an offering; it therefore strains credulity for Defendants to argue that URS should be required to do so in an opt-out. Which specific transactions are ultimately traceable to the 2007 Offering is a legal determination that Your Honor will make in the course of URS' action. Defendants' attempt to force URS to argue its Section 11 claim through the opt-out procedure is wholly inappropriate.

The fact that Defendants are troubling the Court with this issue on the eve of the settlement hearing is highly suspicious. When a class member opts out, its trading data is relevant only to identify that it was, in fact, a class member and to determine if the total number of shares it is opting out will jeopardize the "walk away" or "blow" provision – the threshold by which the parties can walk away from the settlement. Defendants know that URS' holdings in no way threaten the settlement – and do not claim otherwise. URS underscored this to Defendants recently by letter: "As you must know, if you considered every purchase after the 2007 Offering to be traceable this would not trigger the blow provision." (*See* Exh. A attached hereto.) Defendants do know this and have urged the Court to "approve [the settlement] at tomorrow's hearing." Defs. Ltr. at 1. But this begs the question: why would they possibly need that information if the settlement is already approved and they know that URS' holdings do not threaten the blow provision?

The *only* reason Defendants raise this issue is because they want an end-run around the discovery stay. They know they must file a motion to dismiss URS' complaint – as they acknowledge in their letter – and they want in their possession more information than they are entitled to in seeking dismissal of its Section 11 claims. Tellingly, Defendants offer no justification for requiring this data after the settlement is approved, and no authority for the proposition that a class member must argue tracing under Section 11 in the context of opt-out procedures. Accordingly, URS respectfully requests that Your Honor reject Defendants' argument and permit URS' action to proceed expeditiously.

We are happy to address these issues further at tomorrow's fairness hearing.

Respectfully submitted,

Andrew D. Abramowitz

cc: All Counsel (*via* e-mail)

2

# Exhibit A



Direct E-Mail:
AAbramowitz@srkw-law.com

December 24, 2009

*VIA E-MAIL*
Jeremy A. Berman
Skadden, Arps, Slate, Meagher
 & Flom, LLP
Four Times Square
New York, NY 10036-6522
Jeremy.berman@skadden.com

Re:     Utah Retirement Systems v. Strauss, et al., 09 Civ. 3221

Dear Jeremy:

None of the issues you raised in your letter of December 22, 2009 with respect to URS' data in any way casts doubt on the effectiveness of URS' opt out. Neither the Preliminary Order nor the Notice of Settlement requires that in opting out a plaintiff must identify which shares are traceable to a particular offering. That is ultimately a judicial determination. Clearly, the class settlement does not contemplate that the parties thereto or the claims administrator would render an adjudication on the tracing of shares to an offering. As you must know, if you considered every purchase after the 2007 Offering to be traceable this would not trigger the blow provision.

Based on the stonewalling evident in your letters, we no longer consider this a good faith discussion about URS' opt out lawsuit. We have no choice but to assume that defendants are unwilling to discuss a briefing schedule for the amended complaint, and we will therefore pursue our client's rights directly with the Court.

The other ancillary data issues raised in your letter are, again, not relevant to the legitimacy of the opt out. As such, there is simply no reason for defendants' refusal to address the issue of a briefing schedule. Nevertheless, with respect to the transactions for which the trade price is 0, those are all dividends. They were inadvertently included but clearly are meaningless for your calculations and would not, in any event, impact your analyses. The reason they are reflected on the 4th and 5th day of the month is simply

2

because that is when those dividends were processed. With respect to the identical purchases and sales on the same date, those entries reflect transactions that were reversed for whatever reason. Ultimately, they should have no impact on any loss calculation, as those trades cancel each other out. (In the instance of July 5, 2007, where the trade price is 0, the transactions that were reversed are dividends.)

                                      Very truly yours,

                                      Andrew D. Abramowitz

cc: All Counsel (*via* e-mail)